UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SOLOMON JULIUS CARPENTER,

    Defendant.
_____/

File No. 1:10-CR-236

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter comes before the Court on Defendant Solomon Julius Carpenter's motions to quash search warrant, for disclosure of confidential informant, and for a *Franks* hearing. (Dkt. Nos. 16, 20). For the reasons that follow, the motions will be denied

**I.**

On May 25, 2010, Officer Cory Ghiringhelli, an officer with Kalamazoo Public Safety, presented an affidavit for search warrant to Magistrate Nicholas J. Schaberg of the Eighth District Court in Kalamazoo County, Michigan. The affidavit provided in pertinent part that the officer had received information from a confidential informant that there was cocaine and marijuana inside the residence at 609 Dayton ("the residence") in Kalamazoo Township. On that same day, the Magistrate issued a search warrant to search the residence for controlled substances and related items.

On August 18, 2010, Defendant was indicted on one count of possession with intent to distribute 5 grams or more of cocaine base, and one count of possession with intent to distribute 50 kilograms or more of marijuana. Defendant now moves to quash the search warrant, for disclosure of the confidential informant, and for a *Franks* hearing. (Dkt. Nos. 18, 20.) The government opposes the motions.

## II.

### A. Standing

A threshold issue raised by the government is whether Defendant has standing to challenge the search of 609 Dayton. The government contends that Defendant lacks standing because he has neither alleged nor shown that he has a reasonable privacy interest in the house that was searched.

"A person who claims that his Fourth Amendment rights were violated by an unreasonable search must establish that he or she had a subjective expectation of privacy in the premises searched and that society would recognize his or her expectation as legitimate." *United States v. Harris*, 255 F.3d 288, 294 (6th Cir. 2001) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). *See also United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005) ("A defendant, however, must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation [must be] one that society is prepared to recognize as legitimate.")

Although the text of the Fourth Amendment suggests that its protections extend only to people in "their" houses, the Supreme Court has held that in some circumstances a person may have a legitimate expectation of privacy in the house of someone else. *Minnesota*, 525 U.S. at 89.

> In determining whether an individual has a legitimate expectation of privacy, we look to the nature of the individual's ties to the property. [*Minnesota*, 119 S. Ct. at 473]. Although an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection. *Id*. This is particularly true where, as here, the person seeking the protections of the Fourth Amendment was on the premises for the sole purpose of engaging in drug-related business transactions. *Id*.

*Harris*, 255 F.3d at 294-95. "[T]hose who inhabit a residence wrongfully may not claim a legitimate expectation of privacy in the property." *Whitehead*, 415 F.3d at 587.

In his motion Defendant makes only two allegations regarding his relationship to 609 Dayton:

> 7. Defendant was released from the Kalamazoo County jail on the evening of May 24, 2010, and went to 609 Dayton alone that evening.
>
> 8. Defendant began his morning on May 25, 2010 at 609 Dayton Street alone prior to leaving for school.

(Dkt. No. 16, Mot. to Quash ¶¶ 7-8.) However, Defendant subsequently filed a motion for a *Franks* hearing (Dkt. No. 20), to which he has attached his affidavit indicating that he slept at 609 Dayton occasionally, he woke up 609 Dayton on May 25, he had permission to sleep and use the residence from Grant Patterson, and he paid rent to Grant Patterson. (Carpenter Aff. ¶¶ 3-5, 9.)

For purposes of this motion, the Court will assume that Defendant has established that he had a subjective expectation of privacy in 609 Dayton that society would recognize as legitimate, such that he has standing to bring the motion to suppress.

**Search Warrant**

Defendant moves to quash the search warrant based upon his contention that the affidavit was false in two material respects and because it lacks sufficient indicia of the informant's reliability.

The Fourth Amendment requires that a search warrant be supported by probable cause. U.S. Const., amend. IV. "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). In determining whether to issue a search warrant, the issuing magistrate is required to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'" *Id.* This Court's review

of the sufficiency of the evidence supporting probable cause is limited to "the information presented in the four-corners of the affidavit." *Frazier*, 423 F.3d at 531.

The Court will first consider Defendant's motion to quash the search warrant on the basis that it lacks sufficient indicia of the informant's reliability. The supporting facts in a search warrant affidavit "need not be based on the direct knowledge and observations of the affiant, but may also come from hearsay information supplied by an informant." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (citing *Jones v. United States*, 362 U.S. 257, 269-70 (1960)). "When confronted with hearsay information from a confidential informant, 'a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information.'" *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir.2003). "[I]ndependent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc)). "[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Id.* (quoting *Helton*, 314 F.3d 812, 820 (6th Cir. 2003)). "Otherwise, he or she should indicate that the police corroborated significant parts of the informant's story." *Id.* (citing *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)).

Officer Ghiringhelli's affidavit included evidence that the informant had provided the information in the past that he had found to be credible during other investigations. (Ghiringhelli Aff. ¶ F.) The affidavit also included corroborating information: the informant's statement that there were drugs in the residence belonging to Defendant and Willie Thurman was corroborated by intelligence reports identifying both of these individuals as drug distributors, and by the canine sniff confirming that there was an odor of narcotics emanating from within the residence. (*Id* at ¶¶ H-L, R-S.) Based upon this corroborating information, the Magistrate appropriately relied on the information supplied by the informant to establish probable cause that drugs would be found in the residence.

Warrant affidavits are presumed to be valid, and the determination of probable cause is ordinarily based on the face of the search warrant affidavit alone. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In this case, however, Defendant contends that the warrant affidavit was false in two material respects. He contends that an evidentiary hearing is necessary to show that Officer Ghiringhelli made false statements in affidavit, or that the informant made false statements, and Officer Ghiringhelli included those false statements with reckless disregard for the truth.

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.

*United States v. Moncivais*, 401 F.3d 751, 757 (6th Cir. 2005) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). A defendant is entitled to an evidentiary hearing

6

if and only if:

> (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side.

*United States v. Campbell*, 878 F.2d 170 (6th Cir. 1989) (citing *Franks*, 438 U.S. at 171). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* (quoting *Franks*, 438 U.S. at 171-72).

Defendant contends that the affidavit was materially false because it stated that the residence was vacant. Defendant has asserted in his affidavit that the residence "was fully furnished on May 25, 2010 which was readily apparent from looking into the residence from an outside window;" that he "maintained personal property on the enclosed porch, e.g., T.V., entertainment center, children's playpen, child car seat;" that there was a motor vehicle on the premises; and that there was a cat in the residence and a cat jungle gym on the porch. (Carpenter Aff. ¶¶ 27-30.)

Although the affidavit noted that the informant had advised that the residence was vacant, Officer Ghiringhelli went to the residence himself, where he observed a vehicle, looked in a window, and noticed that the residence had only a few items inside of it. (Ghiringhelli Aff. ¶¶ N, Q.)

Whether the residence was fully furnished or had only a few items inside of it is a matter of characterization rather than a contradiction in the facts. Defendant's affidavit does

not constitute a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." More importantly, whether or not the house was vacant was not material to a determination of whether drugs would likely be found inside the residence. Even if the reference to the vacancy of the house were stricken from the affidavit, there was still substantial evidence to support a probable cause finding based on the statement that drugs were seen in the residence that day, on the fact that individuals associated with the house were suspected drug dealers, and on the canine alert to the odor of drugs emanating from the front door of the residence.

Defendant also contends that the affidavit was materially false because no one other than Defendant was inside of the residence on May 25, 2010, prior to the execution of the warrant. In support of this statement Defendant states in his affidavit that he was in the residence until 10:00 a.m., that no one visited him at the residence prior to 10:00 a.m., that no one had permission or the right to be legally on the premises other than Defendant and Grant Patterson, and Grant Patterson did not have a key to the residence. (Carpenter Aff. ¶¶ 22-25.)

Defendant acknowledges that he was not present at the residence between 10:00 a.m. and 3:00 p.m., so he does not have personal knowledge of what occurred at the residence between 10:00 a.m. and 3:00 p.m. Defendant does not suggest what Officer Ghiringhelli knew regarding the individuals who had access to the residence. Again, Defendant has failed to make a substantial preliminary showing that the officer acted with reckless disregard for

the truth when he relayed the informant's statement that the informant had observed drugs in the residence that day.

**Disclosure of Confidential Informant**

Defendant moves for disclosure of the confidential informant on the basis that disclosure is necessary to determine whether the affiant accurately represented what he was told by the informant. Defendant contends that either the informant lied or the officer lied about what he learned from the informant.

The Supreme Court has a long history of protecting the government's "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege is not absolute. It is limited by "the fundamental requirements of fairness." *Id.* at 60. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The mere invocation of the right to disclosure of the confidential informant "does not automatically outweigh the public interest in protecting confidential informants." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) (quoting *Taylor v. Illinois*, 484 U.S. 400, 414 (1988)). "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993) (quoting *Moore*, 954 F.2d at 381)). The burden is on the defendant "to show how disclosure of the informant would

substantively assist his defense." *Id.* (citing *United States v. Willis*, 473 F.2d 450, 452 (6th Cir. 1973)). Where the defendant's claims are based on "mere conjecture or supposition about the possible relevancy of the informant's testimony," such claims are insufficient to warrant disclosure. *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985).

Defendant seeks disclosure of the confidential informant for the sole purpose of showing that the affiant lied on the search warrant affidavit. Defendant has not made a sufficient preliminary showing to warrant a *Franks* evidentiary hearing where he could challenge the presumption that the search warrant is valid. Accordingly, Defendant he has not made a sufficient showing that he needs to know the identity of the confidential informant.

For the reasons stated, Defendant's motions to quash search warrant, for disclosure of confidential informant, and for a *Franks* hearing. (Dkt. Nos. 16, 20) will be denied.

An order consistent with this opinion will be entered.


Dated: October 15, 2010          /s/ Robert Holmes Bell
         ROBERT HOLMES BELL
         UNITED STATES DISTRICT JUDGE