UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                  File No. 1:10-CR-236

SOLOMON JULIUS CARPENTER,

        Defendant.
_____/


<u>Sentencing</u>

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
April 4, 2011


<u>APPEARANCES</u>


MARK V. COURTADE               CARROUS F. ROBINSON
Assistant U.S. Attorney       TRACHELLE C. YOUNG
P.O. Box 208                    2501 N. Saginaw St.
Grand Rapids, MI 49501        Flint, MI 48505
Attorney for Plaintiff        Attorneys for Defendant


Also Present:  Amber L. Gonzalez, U.S. Probation Officer


Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

2

1                                    Grand Rapids, Michigan

2                                    April 4, 2011

3                                    1:22 p.m.

4                          -    -    -

5

6                    P R O C E E D I N G S

7

8           THE COURT:  You may be seated.

9           This is the matter of <u>United States v. Solomon</u>

10  <u>Julius Carpenter</u>.  Mr. Courtade represents the United States

11  Attorney's Office.  Mr. Robinson and Ms. Young represent Mr.

12  Carpenter in this matter.

13          A plea was tendered in this matter on October 21st

14  to Count 1 of an -- you may be seated, sir -- to Count 1 of an

15  indictment charging possession with intent to distribute more

16  than five grams of cocaine base, 21 United States Code

17  841(a)(1) and 841(b)(1)(B)(iii).  A plea agreement was entered

18  and accepted by this Court at that time, the Court having

19  found at that time that the charges pled to adequately reflect

20  the seriousness of the offense behavior.

21          Subsequent to that time a change of plea was

22  filed -- motion was filed.  A failure to appear at the trial

23  date (sic) which was established of January 24th, 2011, caused

24  a warrant for the arrest of Mr. Carpenter to be implemented.

25  It appears that there was a motion to remove Mr. Upshaw as

1    counsel filed by Mr. Carpenter and to substitute Mr. Robinson

2    and Ms. Young on behalf of Mr. Carpenter in this matter, and

3    the Court has received just the 1st of this month a motion to

4    withdraw plea and a motion for a preliminary examination. I'm

5    not sure quite how to interpret that, but this has been filed

6    here apparently by Mr. Carpenter.  At least that's his -- the

7    line after this motion follows with him, and it appears to

8    have within it some requests of setting aside the plea and

9    other such matters.

10             At this time, Mr. Robinson, are you ready to be --

11   will you wish to be heard on these various motions?

12             MR. ROBINSON:  Yes, Your Honor.  We're ready to

13   proceed.

14             THE COURT:  You may come to the podium and I'll

15   listen to you.

16             MR. ROBINSON:  Your Honor, the Court is well aware

17   of the history of this matter, and that history includes a

18   plea of guilty pursuant to a Rule 11 agreement following the

19   abandonment of an earlier plea agreement.  The Court is aware

20   that the first plea agreement was not accepted for the reason

21   that Mr. Carpenter at that time --

22             THE COURT:  Excuse me.  Excuse me.  There's

23   something going on here.  What is that music?

24             MS. YOUNG:  I apologize, Your Honor.

25             THE COURT:  Okay.  Continue, please.

1          MR. ROBINSON:  For the reason that at the time of
2    the first plea attempt and immediately following, Mr.
3    Carpenter continued to profess his innocence, claiming that
4    the attempt to plead guilty was induced by duress, I believe
5    was the language that he used, and the Court did not accept it
6    at that time.  It appears that immediately thereafter his
7    counsel contacted the U.S. attorney and advised that there had
8    been a change of heart as it relates to the desire to enter a
9    plea pursuant to the Rule 11 agreement, and immediately
10   thereafter, I believe on October 21st, Mr. Carpenter was
11   before you and entered a plea.  He now seeks to ask the Court
12   to permit him to withdraw that plea and allow him to have a
13   trial on the matters contained in the indictment.
14          Your Honor is well aware that the case law
15   recognizes consideration of some seven factors in the Court
16   determining whether the Court would permit a withdrawal of the
17   plea or would not permit the withdrawal of the plea.  These
18   factors, these seven factors include and it seems from this
19   counsel's reading of the cases that a primary concern or the
20   primary concern is a consideration of the timeliness of his
21   protesting his plea.
22          Let me say for the record that I believe sometime in
23   January this counsel consulted with the defendant, at which
24   time the history of the matter was reviewed.  I believe this
25   was prior to his scheduled sentencing date.  I'm not certain

1    of that date, and I mention it only to say that immediately

2    following his plea he expressed the desire to have that plea

3    withdrawn.

4                    THE COURT:  Now, let me see if I understand it.  I

5    have a sentencing date set that was set for January 24th and

6    apparently it appears that your client did not attend, and it

7    appears that the motion to withdraw the guilty plea was filed

8    on the 28th here of March of this year.  Is that right?

9                    MR. ROBINSON:  Yes.

10                   THE COURT:  And your appearance was entered when?

11                   MR. ROBINSON:  I'm not sure of the date.

12                   THE COURT:  Do you happen to have that from the

13   government?

14                   MR. COURTADE:  I'm looking right now.  I think I

15   do.

16                   THE COURT:  I'm sorry.  I've got your appearance, I

17   think --

18                   MR. ROBINSON:  I'm sorry, Judge?

19                   THE COURT:  I think I have your appearance of the

20   7th of March.  Is that right?

21                   MR. ROBINSON:  About that time, Your Honor.  I

22   believe that is.

23                   THE COURT:  Okay.  I'm sorry to interrupt you.

24   Continue.  Continue.

25                   MR. ROBINSON:  Yes.  Your Honor, let me just

1   indicate that I believe I was first consulted, not retained,

2   but consulted in January.  I mention that only as it relates

3   to the timeliness of his assertions of innocence and of his

4   assertion of his desire to have his plea withdrawn.  I

5   recognize that it was sometime later when the motion was in

6   fact filed, but I am hopeful that the Court would take into

7   consideration the totality of the circumstances in dealing

8   with that question, the timeliness.

9           What I'm suggesting, Your Honor, is that the desire

10  to have the plea withdrawn was determined immediately again

11  following the plea.  It was a follow-up to the first

12  rejection, really, and I mention it again only as it relates

13  to the timeliness.  We understand that the plea -- that the

14  motion itself was not filed until sometime later, but the

15  Court we're hopeful will consider the totality of the

16  circumstances.

17          First of all, as the Court well knows, we are

18  substitute counsel.  Secondly, substitute counsel could not

19  come into a case claiming anything, and when I say claiming

20  anything I'm talking about giving an opinion, any opinion

21  about anything related to the case, without being reasonably

22  acquainted with the facts, circumstances, and the history of

23  that case.  So that when he consulted with me, we were not in

24  a position to reasonably discuss it.

25          I do not know at what point, but at some point the

1    Court is aware that he had failed to appear for sentencing.

2    And at some later date, and I don't have that date, I

3    contacted counsel to advise that his intent was to surrender

4    himself as soon as possible, and what I was talking about was

5    that he had hoped to make my office conversant with the

6    circumstances so that we could reasonably discuss it with him,

7    and when that was done, he would turn himself in.  That's what

8    he did.  That was a later date for the reason that it took

9    some time for this counsel to become in any way acquainted

10   with this -- the tortured history of this case.

11            He had prior counsel, Mr. Upshaw, and for some

12   reason, Your Honor, he was unhappy with Mr. Upshaw, and the

13   Court -- which resulted I believe in Mr. Upshaw indicating a

14   desire to withdraw which resulted in standby counsel being

15   appointed.

16            THE COURT:  When did that happen, do you remember?

17            MR. ROBINSON:  Yes.

18            THE COURT:  When did standby counsel -- when was

19   standby counsel appointed?  Here it is.  Here it is.

20            MR. ROBINSON:  I'm sorry, Judge?

21            THE COURT:  Here it is.  Standby counsel -- I'm

22   sorry I'm so vague on this.  I'm trying to keep the -- standby

23   counsel was --

24            MR. ROBINSON:  Stroba, I believe.

25            THE COURT:  -- was involved in Upshaw's motion to

1    withdraw.

2              MR. ROBINSON:  Yes.

3              THE COURT:  The Court denied it, but it appointed

4    the Public Defender's Office to act as standby for the limited

5    purpose of conferring with defendant and Mr. Upshaw prior to

6    and at the time of sentencing.  Is that about right?

7              MR. ROBINSON:  I believe so.

8              THE COURT:  And that was on December 20th, right?

9              MR. ROBINSON:  Yes.

10             THE COURT:  And the plea was tendered on October

11   21st, approximately two months before that.

12             MR. ROBINSON:  That's right.

13             THE COURT:  And does the Probation Department -- can

14   you tell me when the Presentence Investigation Report was sent

15   to all the parties?  I don't see a date here as to when it was

16   completed or sent.

17             PROBATION OFFICER GONZALEZ:  It was mailed on

18   December 3rd, Your Honor.

19             THE COURT:  December 3rd, okay.

20             MR. COURTADE:  Your Honor, it was also

21   electronically filed I think on December 6th by notice that we

22   received, so --

23             THE COURT:  December 6th, all right.  I got the

24   timeline now.  All right.  I've got my dates.  Continue.

25             MR. ROBINSON:  Yes.  Your Honor, prior to all of

this he had protested his innocence.  The presentence and his
actual movement in this regard, the presentence report and his
interview I must acknowledge was a factor in the final
determinations, and I say that for this reason.  There was
conflict between his initial attorney, temporary resolution by
the plea.  Mr. Carpenter was advised, he believed, of a
possible sentence disposition, a part of which included the
question of acceptance of responsibility.

At the time of his interview for anticipating the
presentation of a presentence report, he understood in his
language and his interpretation that his reliance upon the
advice of counsel in advising him that he would be given
points for acceptance of responsibility was mistaken.  In
other words, he understood that he had received bad advice
from his counsel.  The immediate advice that he would not be
given points for acceptance of responsibility came from the
Probation Department, which led him to believe, rightfully or
wrongfully, that he could not rely upon the advice of counsel
and that he had been misled.  All of these considerations were
factors relating to the delay in presenting a motion to
withdraw the plea.

Additionally, recent counsel have requested the file
from former counsel, including all of the police reports, et
cetera, and did not receive them.  I believe it was only last
week, the week before last that we actually received them.

1    But present counsel did not want to proceed without reviewing

2    the entire history, including the discovery material, the

3    police reports, with the hope that somewhere in all these

4    documents would be something that would support the position

5    and the claim of Mr. Carpenter.

6            So I'm just saying that all of these circumstances

7    and factors related to the delay.  But again, the timeliness

8    of it, even though it may be a critical factor, is just one of

9    seven factors, and the Court is well aware of all of them.

10   The reason for the delay was because present counsel did not

11   feel that he had sufficient information upon which to

12   proceed.

13           He had at all times asserted his innocence.  The

14   Court is aware of the factors underlying the entry of the

15   plea; that is, that he had initially asserted it was under

16   duress.  He asserted that he was innocent.  But he now claims

17   that he was persuaded by virtue of the Rule 11 to accept it

18   notwithstanding his claim of innocence.  There's no potential

19   prejudice to the government, and the Court should allow the

20   withdrawal of the plea.  Again, Your Honor, I think Your Honor

21   is thoroughly familiar with the facts and circumstances,

22   history.

23           THE COURT:  You have an affidavit filed by your

24   client asserting his innocence and asserting --

25           MR. ROBINSON:  There are affidavits on file, Judge.

1          THE COURT:  Okay.

2          MR. ROBINSON:  In fact, the most recent affidavit

3   was -- well, there were two, one that was prepared by my

4   office and then a pro se affidavit that was filed by Mr.

5   Carpenter.  We received notice I believe that the pro se

6   affidavit came through in such a manner that it could not be

7   read, and what we did was sent it back in, typed it up,

8   retyped it so that the Court could read it.  Yes, but there

9   are affidavits on file, Your Honor, supporting the position of

10  the defendant here.

11         THE COURT:  Okay.  Response, Mr. Courtade?

12         MR. COURTADE:  Your Honor, we filed an extensive

13  brief in this case where we dispute much of what the defendant

14  claims and especially his veracity.  The defendant entered

15  his -- first of all, as to the first plea on December -- I'm

16  sorry, October 15th, the defendant -- that plea was not

17  abandoned because the defendant said I'm innocent.  The Court

18  refused to accept it because he did not acknowledge the

19  elements of the crime.

20         The decision not to accept it had nothing to do with

21  his claim that he was under duress.  The Court went over that

22  extensively with the defendant and confirmed that his claim of

23  duress was nothing more or less than he didn't like the fact

24  that he could be supplemented if he did not accept the plea,

25  and he was willing to go forward and stated that he was not

1    under duress.  It's just when it came to the point of

2    admitting the elements of the crime, he refused to do so.

3            Now, immediately following that aborted attempt, his

4    counsel approached the government and indicated that the

5    defendant had a change of heart and the defendant was

6    directing counsel to schedule a new plea and then changed some

7    of the terms of the agreement.

8            THE COURT:  What terms did you change?

9            MR. COURTADE:  We changed the agreement so that we

10   would be dismissing the supplemental information that we had

11   filed in the meantime, Your Honor.

12           THE COURT:  In other words, you dismissed the

13   enhancement?

14           MR. COURTADE:  Yes.  The government asserts that if

15   defendant would have produced his prior attorney, his attorney

16   would quite frankly contradict most of what the defendant says

17   about his claim that he asserted innocence after the guilty

18   plea in October.  The defendant, it is our position, never

19   made such a claim to defense counsel, and his counsel, they

20   have chosen strategically not to produce him today because of

21   that.  Additionally, it's our understanding counsel has

22   letters from the defendant wherein the defendant does not make

23   any assertion or claim of innocence and is happy to proceed

24   towards sentencing.

25           On November 19th, almost a month after the plea, the

1    defendant filed a motion to be released on bond and attached

2    to it a letter to the Court in which he never claimed he'd

3    been forced to do anything.  In fact, he seemed very accepting

4    of the sentencing that was going to be coming and stated to

5    the Court that he looked forward to the opportunity to

6    rehabilitate himself.  At no time did he suggest there was any

7    problem with counsel or that counsel wasn't acceding to his

8    wishes.  The Court denied that motion on November 23rd.  The

9    defendant in his letter attached to that motion had indicated

10   he was hoping to get out of jail for Christmas, and it became

11   clear that he probably wouldn't.

12           I find it interesting that it was on November 29th

13   that the defendant was interviewed by the Pretrial Services

14   officer preparing the presentence report, and the defendant

15   never claimed at that point that he had been browbeaten into a

16   plea, never claimed that he was innocent, never claimed that

17   he had a problem with counsel.  In fact, what he started to do

18   was lie as to the acceptance of responsibility over his

19   lawyer's attempts to get him to stick with the truth and not

20   make these other outrageous statements.

21           The presentence report was disclosed between

22   December 3rd and December 6th, and it's clear defense counsel

23   met with his client and discussed the presentence report and

24   the fact that he was not going to be -- it was not recommended

25   that he receive acceptance of responsibility credit.  That

1    forced defense counsel -- their altercation forced defense

2    counsel on December 8 to move to withdraw as counsel, and

3    that's the first time it ever appears anywhere in any document

4    that the government's aware of that the defendant was claiming

5    that he had been tricked into entering a plea.

6              Defense counsel would have taken the position that

7    his client was not tricked and that his client's accusation

8    that he was is what caused defense counsel to move to

9    withdraw, and it is our understanding that the defense counsel

10   has letters from the defendant saying I don't want you to

11   withdraw.  I want you to stay as my attorney.  It was defense

12   counsel who was not going to put up with the allegations being

13   raised by the defendant.

14              I note that on December 17th the defendant tested

15   positive for drug usage while at KPEP.  He was told that -- it

16   was our understanding he was led to believe that since he was

17   going to be going to court in a couple of days, that the

18   motion was going to be that his bond be revoked and he be put

19   in full custody.  He absconded the next day on December 18th.

20   He failed to appear in court on December 20th when counsel

21   had -- the hearing was held on the request of counsel to

22   withdraw.  Counsel in court that day stated his client was

23   aware of the proceeding and did not appear.  He also informed

24   the government that he was in telephone contact with the

25   defendant who was still in the area.

1          The defendant failed to appear at sentencing on

2     December 24th (sic).  He was aware of that date from the time

3     that he pled guilty on the 21st.  Between January 24th and

4     March 4th when the defendant surrendered, there were many

5     attempts to locate the defendant in Kalamazoo, including the

6     second half of February, within the last week or ten days of

7     February, the United States Marshal's Service executed a

8     search warrant at his mother's home where he was believed to

9     have been staying and then went and sought him out at various

10    locations he was connected with in Kalamazoo.

11          Several days later the United States learned from

12    present counsel that the defendant was in Flint and wanted to

13    surrender, but he didn't for several weeks.  He finally

14    surrendered on March 4th of this year.  When we were in court

15    on March 7th defense counsel said that they were prepared to

16    file a motion to withdraw the guilty plea in the case and that

17    they just wanted to look at the file for more information, but

18    they were well aware of the requirements of filing that motion

19    and that they were intended to comply.

20          I cannot read the affidavit of Solomon Carpenter

21    that was attached to the motion wherein he supposedly

22    allegedly claims he had asserted his innocence.  I am aware of

23    the pro se motion and affidavit that was attached.  I can read

24    that one because it's been retyped by counsel.

25          It's our position that the defendant has failed,

1   fails on six of the seven tests that are required to withdraw

2   your guilty plea, the seventh being absolute prejudice to the

3   government.  While there's great inconvenience and expense,

4   there may not be prejudice because we still have the evidence

5   after ten months.  But in reality every other factor, as we've

6   outlined in our brief, weighs heavily against the defendant.

7            He waited more than 155 days to file his motion.  He

8   absconded on bond.  His claims are not supported by affidavit,

9   and certainly he is not supporting them with testimony of his

10  counsel who would, we believe, refute virtually all his claims

11  and allegations, and that's a strategic decision on his part

12  not to go forward and to produce that type of evidence.

13           We believe the defendant's affidavit contains

14  falsehoods.  Certainly his -- the one affidavit we can read

15  contains several issues that we would take exception with.

16  Find my copy of it.

17           We believe, therefore, in actuality the Court should

18  deny the motion, and in fact the defendant should be charged

19  with obstructing justice at the time that the Court does

20  impose sentence.  His statement that his attorney told him to

21  abscond on bond we believe is false.  His claim he was forced

22  to plead guilty was false.  If his claim is to be believed, he

23  would have lied to the Court under oath at the time of his

24  guilty plea, which under 3C1.1 is grounds for finding

25  obstruction.  His claim that his attorney told him to lie we

1   believe is fabricated, and his absconding on bond is evidence

2   of not only failure to accept responsibility, but is evidence

3   of obstruction as well.

4            THE COURT:  Do you wish to respond briefly before

5   the Court rules?

6            MR. ROBINSON:  Your Honor, let me just clarify one

7   thing.  I mentioned his discussions with the probation agent,

8   and what got him extremely concerned, Your Honor, was that on

9   the first plea, on the first plea there was a -- there was

10  struck out a portion where he waived his rights to challenge

11  the sentence and lines were drawn through it.  That was not so

12  on the second Rule 11 agreement.

13           But let me just get back to this question of notice

14  of his claim, and I'm sure Your Honor has been exposed to

15  people who enter a plea sometime for the reason they believe

16  that to be a better disposition because it would be unknown as

17  to how a jury would look at the facts in any case, and nobody

18  in any case could guarantee that.  But on the essential

19  question, if we look at the presentence report itself, and

20  this relates to his concern, under Paragraph 42, and I

21  recognize that which is is, but the drafter of that report

22  says:  "Mr. Carpenter has provided several versions of the

23  offense conduct.  He stated during the presentence interview

24  that he had never sold drugs in his life, contrary to what he

25  told the arresting officers and the Court during his plea of

1    guilty."

2            Your Honor, I mention that only to indicate an

3    acknowledgment of his early protesting of his innocence.   In

4    fact, in the same paragraph the writer says he told Pretrial

5    Services he's being railroaded by the federal government and

6    he is innocent of the charges.   Your Honor, I mention that

7    again only in relationship to his early claims, much, much

8    earlier than indicated by the motion itself, his earlier

9    claims of innocence as it relates to the charges here.

10            THE COURT:   There are several objections.   I'm not

11    sure whether they stand as objections right now, but Paragraph

12    9 of the presentence report appears to be boldfaced, which

13    normally indicates there's an objection to it.   Is that

14    presently being objected to, Mr. Robinson?

15            MR. ROBINSON:   I'm sorry, Your Honor?

16            THE COURT:   Paragraph 9 of the presentence report,

17    is that presently being objected to?

18            MR. ROBINSON:   Let me -- Your Honor, are you

19    referring to his efforts to comply with bond conditions?

20            THE COURT:   It's a paragraph that begins:   "On

21    September 1st, 2010, Mr. Carpenter was released on bond and

22    was required to reside at Kalamazoo Probation Enhancement

23    Program."

24            MR. ROBINSON:   Yes, Your Honor.   Yes, Your Honor.

25            THE COURT:   Yes what?

1          MR. ROBINSON:  You said did he make these

2     statements?

3          THE COURT:  No, is this being objected to or is this

4     not in issue at this time?  Apparently there was some drug

5     testing and there was absconding from the KPEP program.  Is

6     that being objected to or is that not?

7          MR. ROBINSON:  Not for purposes of this motion,

8     Judge.  Again, that supports his earlier claims of innocence.

9          THE COURT:  Well, I'm not sure I would read it that

10    way, but I'm saying is there an objection to the facts

11    contained within that paragraph?

12         MR. ROBINSON:  Your Honor, we would urge that that

13    be accepted only for purposes of establishing his early

14    protestations of innocence.

15         THE COURT:  Well, that wasn't my question.  My

16    question is are those -- there may be implications drawn from

17    the facts, but are the facts being objected to for any

18    reason?

19         MR. ROBINSON:  Implications drawn from the fact of

20    what?

21         THE COURT:  Are there -- let me go through this

22    again.  Are there any objections factually to what Paragraph 9

23    contains?

24         MR. ROBINSON:  Just a moment, Your Honor.

25    (Defense counsel conferred with Defendant Carpenter.)

1          MR. ROBINSON:  Your Honor, we acknowledge the truth

2   of the statement under Paragraph 9.

3          THE COURT:  There are statements and facts that are

4   alleged to have occurred in Paragraph 13 as well, and -- yes,

5   that are being contested.  If all are admitted, I'll say 9 is

6   admitted, not an issue.

7   (Defense counsel conferred with Defendant Carpenter.)

8          MR. ROBINSON:  Your Honor, as it relates to a

9   statement under Paragraph 13, Mr. Carpenter acknowledges the

10  truth except with the exception of the last sentence relating

11  to a struggle.  He indicates that he did not struggle with

12  anyone, that at that time the officers had weapons pointed at

13  him and he certainly had no struggle, made any effort to

14  prevent being handcuffed.  Is that what the Court had

15  referenced earlier?

16         THE COURT:  Yes, that was partially what I had.  I

17  want to see what Mr. Courtade -- where are we --

18         MR. ROBINSON:  He denies that.

19         THE COURT:  Okay.  Where are we on that issue, Mr.

20  Courtade?

21         MR. COURTADE:  Your Honor, as the Pretrial Services

22  officer indicates, the police reports are replete with

23  officers making statements that they had -- it took several of

24  them to get the handcuffs on the defendant.  Now, whether the

25  word "struggle" is the right word or whether it's difficulty

1    getting handcuffs on him, I think the implication is the same,

2    and that is that the defendant was not a -- did not willingly

3    just put his hands behind his back.  So if the word "struggle"

4    is too strong, I would suggest the words that it took several

5    officers to handcuff him would be more along the lines of it.

6            THE COURT:  I don't believe it's material to this

7    case, Mr. Robinson.  Mr. Robinson, I'm striking that last

8    sentence.

9            MR. ROBINSON:  I'm sorry, Your Honor?

10           THE COURT:  I'm going to strike that last sentence.

11           MR. ROBINSON:  Very well.

12           THE COURT:  I don't think it adds anything to this

13   case.  Now, Paragraph 20 I think is in contest, is it not?

14   (Defense counsel conferred with Defendant Carpenter.)

15           MR. ROBINSON:  Your Honor, as it relates to the

16   statement contained in Paragraph 20, Mr. Carpenter denies that

17   statement and asserts that at the time he insisted that he had

18   never sold drugs at all and never acknowledged buying or

19   selling any cocaine of any kind.

20           MR. COURTADE:  Your Honor, the Probation Department

21   correctly asserts that the defendant was interviewed by two

22   police officers, that he made the statements that are

23   attributed to him.  I would also point out that at his guilty

24   plea he acknowledged under oath that he possessed the drugs

25   with the intent to distribute them.  So I would suggest that

1    while the defendant may deny and the report may be amended to

2    reflect that the defendant disputes this, the factual

3    assertion that he made the statement to the officers is

4    correct.

5            THE COURT:  Okay.  I'm going to put this on the last

6    page of 20 that Mr. Carpenter denies the factual assertions in

7    this paragraph.  Fair enough, Mr. Robinson?

8            MR. ROBINSON:  Very well.

9            THE COURT:  Okay.  Anything else on the question of

10   setting aside the plea?  Anything else, either one of you?

11           MR. COURTADE:  No, Your Honor.  We would rest on our

12   brief and the facts contained therein.

13           THE COURT:  Well, frankly --

14           MR. ROBINSON:  We have nothing further.

15           THE COURT:  -- this Court has dealt with this matter

16   it seems for several months.  It started obviously early in

17   the fall in October and it started with an attempt to take a

18   plea, and it appears that that plea was aborted by the

19   statements made by Mr. Carpenter at the time on the 15th of

20   October.  And apparently we were back here, the parties were

21   back before the Court on the 21st of October, and this Court

22   reviewed very carefully the transcript of what occurred --

23   well, the Court said good morning,  so it must have been the

24   morning of October the 21st.  At that time the Court was

25   presented with a plea agreement in this matter, which is

1    1:10-CR-236.  Mr. Bruha was standing in for Mr. Courtade.  Mr.

2    Upshaw was representing Mr. Carpenter --

3          Mr. Upshaw said:  Upon reflection and after

4    consultation with me after we left the court on the 15th, my

5    client is prepared and willing to tender a plea of guilty

6    pursuant to a plea agreement.  So the Court said -- asked if

7    this agreement on the 21st indicated that Mr. Upshaw had

8    carefully discussed the plea agreement, advised the client of

9    his rights and the sentencing provisions and the consequences

10   of entering this plea.  And Mr. Upshaw said that he had

11   carefully reviewed that, and he indicated further, as Mr.

12   Robinson has articulated, with the exception of the government

13   moving to dismiss the enhancement after Mr. Carpenter's plea

14   of guilty is entered, which enhancement was significant for

15   the defendant.  By that I mean with the enhancement, his

16   sentence would be significantly enhanced.  Without this

17   enhancement which had been dismissed, the situation had

18   changed.

19          And so the Court brought the parties up to the

20   bench, and the Court said:  Mr. Carpenter, we can't really

21   unwind the clock here.  You were here less than a week ago,

22   right?  And Mr. Carpenter said, Yes.  The Court said:  At that

23   time you entered -- you indicated you had not done anything

24   wrong and you didn't know why you were here and you had some

25   issues.  I note that you've signed the last page of this plea

agreement in which you've indicated that you've read this plea

agreement and you've carefully discussed this with your

attorney.  Mr. Carpenter said, Yes.

The Court said:  And it calls for you to enter a

plea to Count 1 of the indictment charging you with possession

with intent to distribute five kilograms -- excuse me, five

grams or more of cocaine base, crack cocaine.  Is that

correct?  Yes, sir.  Yes, Your Honor.  The Court:  It

indicates in this plea agreement that you understand it and

your attorney has advised you of your rights and possible

defenses to these sentence guidelines and to the consequences

of entering into this agreement.  Do you understand that?  And

Mr. Carpenter said, Yes.

Do you understand the government has indicated that

as to any supplemental informations and other such matters

that may affect your sentencing of this matter, that it will

move to dismiss them and you will have to go forward based

upon this solely on Count 1?  Mr. Carpenter:  Yes, I do.  The

Court:  You had a question before, but do you have a question

now about this?  Mr. Carpenter:  No.

And then the Court said:  Would you raise your right

hand?  Thereon Mr. Carpenter was sworn to tell the truth.

The Court then said:  Is there anything mentally or

physically that would in any way keep you from being able to

participate?  No.  Have any other inducements or promises been

1    made to you other than such as contained in this seven-page

2    agreement here?  Mr. Carpenter:  No.  Has anyone threatened

3    you or forced you in any way or made any promises of leniency

4    or predicted what any sentence might be that this Court might

5    render?  Mr. Carpenter said:  No.  Are you satisfied with the

6    representations of your lawyer, Mr. Upshaw, in this matter?

7    Mr. Carpenter said:  I am.

8         The Court said:  Have you had an adequate

9    opportunity this morning and at times before this morning to

10   thoroughly discuss this matter with your attorney?  Mr.

11   Carpenter said:  Yes.  Do you understand in this matter that

12   the government is contending that you or persons within your

13   influence were in possession of crack cocaine stored at 609

14   Dayton Street in the city of Kalamazoo and that this matter

15   was being stored at that address for purposes of later

16   distribution, hence the possession with intent to distribute

17   five grams or more of crack cocaine on or about the 25th of

18   May?  Mr. Carpenter:  Yes.  Do you understand that charge?

19   Yes, I do.  And what plea would you wish to make to that at

20   this time?  Guilty.

21        The Court:  Do you understand that by entering this

22   guilty plea, you give up the right to a trial, waive the right

23   to a trial before a judge or a jury in this matter?  Yes.  And

24   that you would be giving up your right to go forward at a

25   trial where the government -- you would be presumed innocent

1    and the government would be required to prove your guilt

2    beyond a reasonable doubt?  Yes.  Do you understand you would

3    be giving up the right to call witnesses and subpoena

4    witnesses and cross-examine the government's witnesses and

5    present your own evidence, including your own testimony?

6    Yes.  Do you have any questions about the rights you would be

7    giving up at a trial by this Court accepting your guilty

8    plea?  No.  Do you understand that if the guilty plea is

9    accepted, this would result in your conviction and eventually

10   a sentence imposed by this Court?  Yes.

          You notice parenthetically here the questions that

12   were asked have answers of yes or no, and Mr. Carpenter was

13   appropriately answering them yes or no as the question

14   indicates.

15        Let's proceed on.  Do you understand in this matter

16   that this charge carries a maximum penalty of up to 40 years

17   and/or up to a $2,000,000 fine followed by at least four years

18   and up to that of life of supervised -- on supervised release

19   with a minimum penalty provision of five years in prison in

20   this matter?  Yes, Your Honor.  Do you understand that

21   five-year mandatory provision here over which this Court has

22   no discretion, but has been established by Congress?  Yes, I

23   do.  And that a $100 special assessment would be required to

24   be levied, and that in all other respects this Court would be

25   required to consider certain applicable sentence guidelines as

1    part of the sentencing considerations in addition to the

2    minimum and maximum sentences?  Mr. Carpenter said:  Yes.

3           Then the Court proceeds as follows, and this is

4    critical:  Tell me what you did that you believe makes you

5    wrong, that you did wrong here.  Let the record reflect very

6    carefully the Court asked for a narrative answer, deliberately

7    requiring a defendant if the defendant wished to plead guilty

8    to tender facts and circumstances from which this Court could

9    determine whether or not guilt could be predicated upon this

10   plea.  The following was the answer:  I possessed crack

11   cocaine at 609 Dayton with the intent to deliver the narcotic.

12          The Court:  That's in Kalamazoo?  Yes, Kalamazoo,

13   Michigan.  How much did you have there, the Court asked.  How

14   much cocaine did you have approximately at 609 Dayton?

15   Defendant Carpenter:  Thirty-eight grams.  The Court:  Where

16   had you gotten it?  From a guy that I had met at Rockwell Park

17   named Eric.  Was it fronted to you or did you pay for it?

18   Yes, it was fronted to me.  How much did you -- was it

19   fronted -- how much was the sale price?  Answer:  A thousand

20   dollars.  I'm sorry?  One thousand dollars.  I presume you

21   were intending to resell it or were you intending to break it

22   down?  No, I was just going to give it away for a profit.  The

23   Court:  In other words, you were going to resell it for more

24   than a thousand dollars in order to keep the difference?

25   Carpenter:  Yes.  Did you know this was unlawful?  Yes, Your

1   Honor.  And I would note here Mr. Carpenter was very

2   respectful through this entire matter, very respectful.

3            The Court:  This may seem like a strange question,

4   but how did you know it was crack cocaine?  Because that's

5   what -- the guy who gave it to me, he already had mentioned it

6   was.  This Eric, is that right?  Yes.  Did you have reason to

7   believe Eric?  Mr. Carpenter:  Yes, I guess so since it was,

8   you know, basically already spoken upon before the drugs were

9   in my possession.  Had you had experience with Eric before?

10  No.  Did you know people who knew Eric?  Mr. Carpenter:  No,

11  not offhand.

12           The Court:  How did you know he wasn't selling you

13  brown sugar or tea?  Mr. Carpenter:  Because the drugs smelled

14  like drugs.  Question of the Court:  They smelled like it?

15  Mr. Carpenter:  Yeah.  Was it in rock form?  Mr. Carpenter:

16  Yes.  The Court:  Several rocks or one rock?  Mr. Carpenter:

17  Just one.  The Court:  Kind of a large rock, wasn't it?  Mr.

18  Carpenter:  Yes, Your Honor.  The Court:  Did you calculate

19  from the size of the rock that it would have been

20  thirty-eight, approximately thirty-eight grams?  Mr.

21  Carpenter:  Yes.

22           Then the Court goes on about other drugs, and he

23  says no.  Then on the top of Page 10:  That was the only

24  thing?  That was the only other drugs?  Mr. Carpenter:  Yes,

25  in the residence, yes.  The Court:  Okay.  Was there any on

1     you?  Mr. Carpenter -- this is the question:  Was there any on

2     you?  Mr. Carpenter:  No.  My girlfriend, she had some

3     marijuana that I had, but I asked her to bring it into the

4     house.

5           And then the critical final question:  Why are you

6     pleading guilty?  Answer, Mr. Carpenter:  Because I'd just

7     like to accept my responsibility.  I intended to deliver the

8     drugs as stated here in the paperwork.  The Court finally

9     concluded there was a factual basis demonstrated.

10          Now, the reason why this Court is not going to set

11    aside this guilty plea is as follows.  This Court's colloquy

12    followed very carefully the federal rules that relate -- 11

13    that relates to the taking of the plea.  This Court's review

14    of the plea agreement found that the plea agreement appeared

15    to be full and fair and accurate.  It appeared to have been

16    signed by the then counsel.

17          And let me go back to this then counsel.  This then

18    counsel, Mr. Upshaw, has appeared in front of this Court many,

19    many times.  For what it's worth, he is a respectable member

20    of the Kalamazoo County Bar and of the Federal Bar here.  He

21    has appeared I would say probably in the last decade when he

22    has been on the court-appointed or the defender-appointed list

23    that the Court has approved of many times in this court I

24    would say two or three or four, five, maybe, times a year,

25    representing various indigent defendants who cannot afford

 1   counsel.  Such was the case here.

 2           This Court has only heard -- in its own memory, this

 3   is the second time this Court has ever heard anyone complain

 4   about Mr. Upshaw.  He always comes on time.  He always files

 5   his appearance on time.  He's deferential to everyone.  He's

 6   kind to everybody, including his clients.  He has tried cases

 7   to a jury before this Court.

 8           Are you with us here in this matter, Mr. Carpenter?

 9           DEFENDANT CARPENTER:  Yes.  Yes, Your Honor.

10           THE COURT:  Listen to me.  I'm talking about you.

11           DEFENDANT CARPENTER:  Okay.

12           THE COURT:  He has tried a case, in fact I think he

13   just tried one here last month before this Court to a jury,

14   and capably so.  So his competence, at least from this Court's

15   perspective, and this Court has been trying cases in the

16   circuit court as a trial judge and here in the federal court

17   for almost 24 years for a total of almost 32 years, I suppose,

18   total --

19           MR. ROBINSON:  I'm sorry, Your Honor?

20           THE COURT:  This Court has been a trial judge in the

21   state circuit court and the federal district court for over 30

22   years.  So when I say that Mr. Upshaw has to this Court's mind

23   been a very capable lawyer in this court, I speak from much

24   experience.

25           Let me go further in this.  Further in this, this

 1     Court looked at the preparation of a presentence report, and

 2     in fact when it accepted the plea on the 21st of October

 3     listed January 24th at 1:15 as the time set for the

 4     sentencing.  It appears that in the interim, that is, after

 5     the 24th of October, it appears that not only was the

 6     presentence report prepared, but it appears from some

 7     documentation I have here that there was a motion filed on

 8     December 20th of Mr. Upshaw to withdraw.  He asked for a

 9     public defender to be appointed because his client did not

10     agree with him and was upset with him.

11            Without inquiring as to what the problem was, the

12     Court asked if it was a communication problem between them.

13     He said yes.  The Court then appointed an assistant public

14     defender who I am informed came along or was to have come

15     along to also consult with Mr. Carpenter and also with Mr.

16     Upshaw and to represent Mr. Carpenter at time of sentencing if

17     necessary in this matter.

18            The date for sentencing was not changed.  We

19     proceeded to the date of sentencing.  Mr. Carpenter was not

20     here.  He had been placed out in a halfway house, KPEP

21     placement, subject to the rules and regulations of KPEP.  We

22     call it KPEP.  It's the Kalamazoo halfway house.  It appears

23     that sometime on or about that month in early January that

24     some rule violations are alleged to have occurred with Mr.

25     Carpenter in KPEP, and this Court's not going to adjudicate

1     those because they're not terribly material to what we're

2     doing here, but it appears that Mr. KPEP -- Mr. Carpenter left

3     that facility for whereabouts unknown.

4               It appears that Mr. Upshaw was attempting to locate

5     his client, and it appears that his client was arrested on or

6     about the 3rd of March, early last month.  And at the time of

7     the 4th of March, right the day after his arrest, Judge

8     Carmody as the magistrate to whom this was assigned, the

9     arrest and the arraignments and other matters, granted the

10    stipulation for substitution of counsel for Mr. Carpenter and

11    set the first appearance on the bond violation before Judge

12    Carmody with revoking the bond in the interim.  A status

13    conference was held by this Court on the 10th of March and

14    defense counsel indicated they are not ready for sentencing,

15    they'll be filing a motion to withdraw the plea, and the Court

16    thereafter set sentencing for March 4th (sic), which is today.

17              While I find that the motion to withdraw the plea

18    should be denied by virtue of the fact that this was an

19    assertion of innocence that was not put forth at the time or

20    after the plea was made, the Court finds a very clear and

21    knowing plea entered with facts that were elucidated by Mr.

22    Carpenter.  The Court never prompted an answer from him as to

23    the factual basis, and as I indicated, in one or more of his

24    answers he went beyond the question to volunteer his

25    girlfriend bringing in marijuana and other things which this

1    Court had not requested.

2            Now, why is that important?  That's important

3    because in looking at whether or not the plea is factually

4    accurate and whether or not it's free and voluntary, this

5    Court looks at the verbal and the nonverbal communication of

6    the defendant while under oath to determine whether or not

7    there has been some kinds of promises, some kinds of

8    inducements, some kinds of misunderstanding, some kinds of

9    miscommunication, and this Court frankly saw none on October

10   21st.  And as I say, this Court does hundreds of these pleas.

11   Did not see it.

12           I'm saying this partially because I want the Court

13   of Appeals to know that the integrity of this plea-taking

14   process can always be put in issue by one side, and when we

15   get -- when they get down there in front of three judges at a

16   motion time or at an argument time, many of whom have never

17   taken a guilty plea, I want the record to clearly reflect that

18   the taking of a guilty plea is one of the most serious and one

19   of the most carefully undertaken proceedings that a United

20   States district judge does in his or her description of

21   responsibilities, and this case was no exception whatever to

22   that.

23           Now, as we go to the presentence report, which I

24   would note is some 20 pages in length, this Court would note

25   that that plea agreement was largely undisputed.  The criminal

1   record of the defendant was not disputed, and I might indicate
2   it's quite lengthy, of which the Court was not at all aware at
3   the time the Court took the plea, of course.  The issues that
4   are placed now before the Court are largely in the acceptance
5   of responsibility area, both in the adjustment for acceptance
6   of responsibility which was denied and in Paragraph 42 which
7   is cited very appropriately by Mr. Robinson as being the
8   assertions of Mr. Carpenter that he was being railroaded by
9   the federal government and he's innocent.  That response is
10  totally at odds to what was taken under oath months before
11  after having this Court and his then counsel having carefully
12  reviewed this matter.

13          Now, what do I -- what should my response be to the
14  fact that Mr. Carpenter now claims that Mr. Upshaw railroaded
15  him and misrepresented to him what was going to happen?  I
16  think not.  There obviously was concern at the first plea, big
17  concern at the first plea about the subsequent filing, I
18  presume career criminal or some other charge, which was to
19  aggravate the minimum sentence and enhance the minimum
20  sentence for this felony, and clearly Mr. Carpenter was upset
21  at that first plea-taking process about that.

22          Defense counsel and government's counsel appear to
23  have gotten together.  They appear to have had an agreement
24  that the government was going to withdraw that and dismiss
25  that.  That was not going to be placed before the Court, and

1    it has not been, and subsequent to that the plea agreement

2    that the Court had before it on the 21st of October was

3    entered.

4              So let there be no mistake.  This is not a classic

5    plea agreement, disagreement, ironed out, back with the same

6    plea agreement with a plea.  This is not.  This was a

7    different plea agreement with a substantial enhancement

8    removed from it and not of consideration.  That's your

9    understanding?

10             MR. COURTADE:  That is correct, Your Honor.  After

11   the first plea we filed the supplement.  It was in place.  The

12   defendant asked us to remove that, which would have reduced

13   his sentence by five years of the mandatory minimum required,

14   and we did.

15             THE COURT:  So the five-year minimum is not here

16   before us?

17             MR. COURTADE:  The five-year is.  The ten-year is

18   not.

19             THE COURT:  The ten-year is not, I'm sorry.  The

20   additional five is not.

21             MR. ROBINSON:  I'm sorry, what was that?

22             MR. COURTADE:  If he would have pled guilty on

23   October 16th, the day after he first attempted to plead, his

24   mandatory minimum would have been ten years in prison.  We

25   removed that extra five years by the 21st or by the agreement

1    of the 21st.

2            THE COURT:  So that the second plea entered that was

3    entered on October 21st had only the five-year and a

4    commitment that nothing else would be added, and that's

5    contained within that agreement?

6            MR. COURTADE:  Yes, Your Honor.

7            THE COURT:  Understood?

8            MR. ROBINSON:  That is understood, Your Honor.

9            THE COURT:  Okay.  Okay.  Anything else as to the

10   presentence report that the Court should turn its attention

11   to, Mr. Robinson?

12           MR. ROBINSON:  I believe not, Your Honor.

13           THE COURT:  You and your client can come to the

14   podium and I'll listen to remarks in allocution first from you

15   and then from your client.

16           Let me ask first, Mr. Carpenter, have you had an

17   opportunity to review this plea agreement?

18           DEFENDANT CARPENTER:  The second plea agreement?

19           THE COURT:  Excuse me, I'm sorry.  I've got too much

20   going here.  Have you had a chance to review this Presentence

21   Investigation Report that's the subject matter here?

22           DEFENDANT CARPENTER:  Yes, I have.

23           THE COURT:  Have you consulted with your lawyer, Mr.

24   Robinson, about this and with Ms. Young about this?

25           DEFENDANT CARPENTER:  Yes, I have.

1           THE COURT:  Have they fairly represented their

2     discussions with you, their objections which this Court has

3     resolved in many cases?  Except for the acceptance of

4     responsibility, have they resolved them to your satisfaction?

5           DEFENDANT CARPENTER:  Yes.

6           THE COURT:  Very well.  Are you satisfied with the

7     representations of Mr. Robinson and Ms. Young in this matter?

8           DEFENDANT CARPENTER:  Yes.  I do have one, one issue

9     I would like to put on the record, and that is the initial

10    signing of my plea agreement was not under -- only under

11    duress due to the fact that an enhanced sentence was

12    involved.  It was due to the fact that my attorney, Geoffrey

13    Upshaw, he somehow -- well, not somehow, but he took a ruler

14    and ink pen and scribed lines through the plea agreement, the

15    waiver of rights, collateral attack, and things of this

16    nature.  He told me that this was me preserving all my rights,

17    and he explained to me that I should plead guilty to secure

18    the 33-month sentence and then attack every issue on appeal.

19           So when I saw that he had scribed lines through the

20    plea agreement, it had me wary because I did not understand

21    that that was the way rights should be preserved or not, let

22    alone the fact that I was going to be enhanced that following

23    morning had I not signed on October 14th.  So what Geoffrey

24    Upshaw explained to me was this was the fashion that Mark

25    Courtade sent the plea agreement to his office.  It's with

1    this so-called amendments or scribing of sentences through the

2    initial plea agreement.

3              On the second agreement my attorney told me, Go in

4    there, make up a story so I did not get caught with any

5    relevant conduct, and go through the motions of the

6    questions.  He explained to me do not write "under duress"

7    next to my name because it will only revert back.  Just let me

8    finish one second.

9              THE COURT:  No, let me finish.  Let me tell you that

10   if that's true, you're committing perjury.

11             DEFENDANT CARPENTER:  If what's true?

12             THE COURT:  If you did that, you would have

13   committed perjury.

14             DEFENDANT CARPENTER:  This was at the advice of my

15   counsel.

16             THE COURT:  Excuse me.  You were sworn.  Your

17   counsel wasn't sworn.  Do you understand that you would have

18   committed -- you would be telling me that you committed

19   perjury?

20             DEFENDANT CARPENTER:  Okay, but he --

21             THE COURT:  Excuse me.  Do you understand that?

22             DEFENDANT CARPENTER:  Yes, I understand.

23             THE COURT:  Okay.  Continue, then.

24             DEFENDANT CARPENTER:  Okay.  So with this being

25   said, he told me do not write "under duress" next to my name

1    because it will only put us in the same situation that we were

2    in on the 15th.  So with me thinking that my rights were

3    preserved, that's when I requested transcripts of the two, the

4    two hearings from the 15th and the 21st.  Ever since that

5    instance when I asked Geoffrey Upshaw to get my rights in

6    writing from Mark Courtade, he told me that the Western

7    District does not practice conditional pleas, and ever since

8    then I have had the issue of trying to withdraw my plea from

9    the very beginning.

10              THE COURT:  You are correct this Western District

11   does not take conditional pleas, and yours was not.

12              Counsel, do you have -- as an officer of this Court,

13   do you have a copy of the plea agreement?

14              MR. ROBINSON:  I'm sorry, Your Honor?

15              THE COURT:  As counsel, as an officer of this Court,

16   do you have a copy of that plea agreement?

17              MR. ROBINSON:  Yes.

18              THE COURT:  From Mr. Upshaw's file?

19              MR. ROBINSON:  I'm assuming it's the same plea

20   agreement.

21              MS. YOUNG:  Are you referencing the ones with the

22   strike-through, Your Honor?

23              THE COURT:  I don't know.  I'm referencing the one

24   that's dated October 21st of '10.

25              MR. ROBINSON:  Yes.

1          MS. YOUNG:  Yes, we do have that.

2          MR. ROBINSON:  Yes, we have a copy of that.

3          MR. COURTADE:  Your Honor, there are no

4   strike-throughs on the October 21st.  There were no

5   strike-throughs on the one you received on October 15th

6   either.  I have that one here in my hand.

7          What he's referring to is prior to the 15th, that

8   would be like the 13th or the 14th, defense counsel asked that

9   we strike out a waiver of appeal, which we did and which does

10  not appear on the document on the 15th.  We just -- when he

11  struck it out on the proposed agreement and sent it to our

12  office, we took out the complete agreement -- the complete

13  waiver of appeal on the document from the 15th.  And so the

14  document that went on the 15th had no strikeouts on it because

15  the paragraph had been removed.

16         THE COURT:  And the one that the Court has that you

17  dated October 20th, the one that was given to this Court and

18  this Court showed Mr. Carpenter when his plea was taken on

19  October the 24th -- 21st, excuse me, do not have any

20  strikeouts?

21         MR. COURTADE:  There are none.  So what he's

22  referring to is a draft copy.

23         THE COURT:  I understand.  I understand that.  So

24  I'm going to ask do you have the one that's dated October 20th

25  of 2010?

```
 1              MR. ROBINSON:  Yes.  That's the one that the Court
 2   accepted.
 3              THE COURT:  Right.  Does that have strikeouts in it?
 4              MS. YOUNG:  It does not.
 5              THE COURT:  Okay.  That -- I see.  I see.  I
 6   understand.
 7              MR. ROBINSON:  Your Honor, I think what Mr.
 8   Carpenter really has done was to indicate, and he's not a
 9   lawyer, a cause of confusion for him.
10              THE COURT:  I understand his confusion.  I have no
11   confusion about it, and I don't think he had at the time
12   because he was asked by this Court -- you saw my colloquy
13   here.
14              MR. ROBINSON:  Yes.
15              THE COURT:  At this date here of October 21st, he
16   was asked if this was his and if he had signed it, this one
17   that I'm showing with no crosses out, no crossouts on it.
18              MR. ROBINSON:  No.
19              THE COURT:  Okay.  Anything else, Mr. Carpenter?
20              DEFENDANT CARPENTER:  No, that's it, Your Honor.
21              THE COURT:  Okay.  Very well.  Are you satisfied,
22   then, as you said with your counsel?
23              DEFENDANT CARPENTER:  Yes, I am.
24              THE COURT:  Very well.  Would you wish to first make
25   remarks and then your client, Mr. Robinson?
```

1         MR. ROBINSON:  Your Honor, the Court has already

2  reviewed the history of this case in detail, I guess on

3  multiple occasions, including the time when the plea was

4  accepted.  Counsel has indicated that we're here before the

5  Court pursuant to the Rule 11 agreement that this Court

6  accepted that provides for the minimum five years, five-year

7  sentence.  We do not -- above that, we do not challenge the

8  guidelines.

9         But as the Court has indicated, the Court has found

10  that he accepted responsibility at the time he entered his

11  plea.  And although he may have been confused by some facts

12  and circumstances and questions that developed thereto, this

13  Court has insisted that his acceptance of responsibility was

14  his acceptance, and I'm hopeful that the Court will determine

15  the guidelines to allow for the acceptance of that

16  responsibility notwithstanding what has happened prior here

17  today.

18         In the Court's recitation of the history, the Court

19  indicated that he was arraigned on the 4th.  Your Honor, he

20  walked into the court after not appearing.  It was not that he

21  was picked up on the street in some traffic violation.  He

22  walked into the court, and I believe I advised counsel that he

23  was going to weeks before; that as soon as he could get some

24  matters clear, he was going to walk into the court, and he did

25  walk into the court.  He did not try to run away.  He did not

1    try to avoid what's going to happen here today.  He was aware

2    that whatever happened would impact his freedom for a long

3    time.  It was just a question of how long.

4              So what I'm saying, Your Honor, is that in light of

5    the totality of this situation, in light of his lack of

6    expertise, with the confusion that has appeared for him, and

7    the fact that the Court is not required to follow guidelines,

8    but must consult only, I'm hopeful that the Court will look at

9    the facts of this case.  And that is that on this particular

10   day there were some drugs in this house with which Mr.

11   Carpenter was associated, and I say associated by virtue of

12   the fact that he lived there, and that's why he's here, living

13   in this house where drugs were found and a determination and

14   acknowledgment by him that he possessed those drugs with the

15   intent to deliver.

16             Your Honor, we recognize that's what a reasonable

17   sentence might be, and how we define reasonable is kind of

18   like what's pretty.  It's in the eyes of the beholder, and in

19   this instance you are the beholder, Your Honor, in terms of

20   determining what is reasonable.  But I'm hopeful that in 2011

21   with the state of -- and let me just indicate one further

22   concern, Your Honor.

23             We are in the U.S. District Court.  We are here

24   pursuant to federal law.  We're here and bound by federal

25   law.  But people see the experience of people under similar

1   circumstances that are confronted with state law issues.  I

2   say that only, Your Honor, to indicate that there is a

3   disparity between the two, and if I am a defendant faced with

4   what I view as the harshness of federal law and my neighbor or

5   my friend or my brother is faced with a more relaxed

6   circumstance in state court, sometimes that would give rise to

7   some confusion in my mind.  Sometimes that would make me feel

8   possibly that I was being treated unfairly, notwithstanding

9   the fact we have two different systems with two different

10  legislative bodies and two bodies with different policy

11  matters as it relates to sentence.

12          But the bottom line in this case, you, Your Honor,

13  must determine what's reasonable and fair.  I don't think that

14  my client, and even with this, what we have presented here

15  today, the motion, et cetera, he's not deliberately being an

16  obstructionist, not deliberately being an obstructionist, and

17  I'm hoping that the Court would take that in consideration.

18          He at the time he entered a plea, Judge, was

19  expecting a five-year sentence.  Now, I'm aware that the plea

20  agreement, the plea agreement does not suggest anything as it

21  relates to guidelines and clearly indicates that the Court and

22  the Court alone will determine guidelines as the Court alone

23  will determine sentence.  We're aware of that.  But in

24  approaching this, again I'm hopeful that the Court will not

25  take our appearance here, what my client says as a complete

1    negative.  I'm hopeful that the Court will look at the

2    conduct, will look at his history, impose a reasonable

3    sentence.

4           I would hope that the sentence will be -- the actual

5    period would be confined to the statute, what the minimum

6    statutory is pursuant to the plea agreement.  I don't believe

7    I have anything else.  The Court has heard him, has been

8    exposed to this throughout his history.

9           THE COURT:  Thank you.

10          MR. ROBINSON:  He's not a bad, bad fellow, and

11    what's going to happen to him, I'm sure that even now he

12    doesn't fully appreciate under all of the circumstances that

13    it is completely fair.  But when he walked in and surrendered,

14    Your Honor, he accepted the responsibility with full knowledge

15    that he did not know what this Court would decide and how much

16    of his future life he would be denied his freedom.  I believe

17    I have nothing further.

18          THE COURT:  Thank you.  Thank you.  Thank you, Mr.

19    Robinson.

20          Mr. Carpenter, is there anything you'd wish to say

21    before the Court imposes sentence?

22          DEFENDANT CARPENTER:  No, Your Honor.

23          THE COURT:  Mr. Courtade?

24          MR. COURTADE:  I don't know if you remember the

25    defendant's father, Petie Credell Carpenter.  I believe you

1    sentenced him more than 15 years ago.  He was sentenced on a

2    drug charge.  He's now living in Florida.  I believe he was

3    here in Michigan last summer with his brand new red Viper.

4    The defendant says he got his drugs from an unknown person

5    named Rick in the park.  I really question that.  I have real

6    problems with the defendant's veracity.

7              As you impose sentence here, I think what you have

8    to look at, one of the things you should look at is the

9    defendant says he was expecting a 60-month sentence.  Had the

10   defendant not started trying to game the system with the

11   probation agent, that might have been a possibility.  His

12   guideline range would have suggested to the Court a sentence

13   of between 57 and 71 months.

14             But everything the defendant's done since then, his

15   absconding on bond, his using marijuana, his telling these

16   stories which are getting more and more outrageous, suggest to

17   me that the decision not to award acceptance of responsibility

18   credit is the right one to make because he has not.  He's

19   still trying even today to avoid responsibility for what he

20   did by blaming counsel and blaming everyone but himself for

21   what he did.  I think that the Court should consider that

22   strongly when it decides whether or not he is going to be

23   amenable to rehabilitation is whether or not he accepts that

24   what he did was wrong, and I don't know that he gets it.

25             THE COURT:  Thank you.  Thank you.

1          The Court appreciates, and Mr. Robinson, you've put

2     your finger on some really valid issues of policy and other

3     matters that are going on in the larger community.   The Court

4     is well aware of them.

5          This matter carries an adjusted offense level of 26,

6     and as counsel indicated, the Court cannot permit here or

7     cannot allow and accept the responsibility in part of the

8     adjusted offense level calculations because it's not been

9     had.  So we leave it at a 26 with a criminal history level of

10    III, which is a range of 78 to 96.

11         But the level of III is really, as it pertains to

12    substance abuse trafficking and possession, really isn't a

13    thorough history which begins with the possession of marijuana

14    in District Court with a conviction on 3/7 of 2000; a

15    possession of marijuana in Kalamazoo Circuit Court, a felony,

16    on April 3rd of '01, a year later; a possession of marijuana

17    in Kalamazoo District Court on October 14th of 2003, and for

18    some reason I've got the same October 1 of '03, a possession

19    of marijuana in Kalamazoo District Court; and a possession of

20    marijuana in St. Joe Circuit Court on May 21st of '08.  So I

21    have five drug convictions, marijuana convictions, drug

22    convictions in the last ten years.  And I note here that the

23    sentences of them are, as Mr. Robinson indicated, minimal

24    sentences.  They're not dramatic sentences.  They're not

25    sentences that would stop one in their tracks, one would

1      think, and so there is a disparity.

2              In this case Mr. Carpenter was -- task force

3      obviously was part of the search that gave rise to this case,

4      including state and federal officers.  This involves 38 grams

5      of crack cocaine.  There's been much discussion in Congress

6      about the hundred-to-one and now it's an eighteen-to-one ratio

7      of crack to powder.  There are some who would indicate that it

8      ought to be one-to-one.  For what it's worth, this Court

9      believes that eighteen-to-one is probably a good, at long

10     last, a good resolution of that tension between one and the

11     other, crack cocaine being obviously exceedingly more

12     addictive, connected with much more violence nationally and

13     internationally.

14             It appears that the nature and circumstances, then,

15     of this offense, being that of a rather substantial quantity,

16     at least from a street standpoint, of crack cocaine and the

17     history and characteristics of Mr. Carpenter, there is some

18     reference to drug use while at the halfway house and drug

19     testing at the halfway house.  But I don't think this Court

20     has to deal with that other than make mention that it showed

21     itself again.

22             So it is this Court's duty under Section 3553(a) of

23     the federal statute to impose a sufficient sentence to comply

24     with the statute's purpose, but not more than is necessary.

25     The Court looks at whether or not this is a serious offense,

1    and it is; and whether or not there has been respect for the

2    law and whether or not this would promote respect.  Well, it

3    appears that if one looks back over the last ten years, Mr.

4    Carpenter has little, if any, respect for the laws of the

5    state of Michigan or the United States as it applies to

6    substance abuse.  And that is of great concern to this Court,

7    not only the pattern of the sentence convictions, but the fact

8    that he's here with 38 grams.

9           A just punishment means that some kind of an

10   adequate deterrence must be made to this criminal conduct

11   because it would appear that absent a deterrent sentence,

12   there is a substantial likelihood of recidivism, and that must

13   be a criteria the Court employs.  This Court doesn't believe

14   that the protection of the public is a major factor to

15   consider, but this Court believes that educational and

16   correctional treatment is a factor that this Court should very

17   seriously consider as part of this Court's matrix of

18   sentencing in this matter.

19          So accordingly the sentence of this Court will be

20   that of 96 months in the custody of the Federal Bureau of

21   Prisons.  That is within the sentence range, although this

22   Court is not bound by the sentence guideline range.  It's a

23   guideline.  This Court finds that it's a sufficient guideline

24   in this case with two recommendations to the Federal Bureau of

25   Prisons.

1          First, that Mr. Carpenter be evaluated and treated

2    for substance abuse.  He has a long history in it, probably

3    many occasions of attempt to treat that, but we will give the

4    prison officials an opportunity and him hopefully another

5    chance to see if he can get away from this issue.

6          Secondly, and very importantly, this Court finds

7    that Mr. Carpenter is an intelligent young man, albeit

8    unmarried, albeit there are four tiny children that have been

9    born out of wedlock to him, but he should be given vocational

10   and educational training.  This Court believes that with the

11   right attitude and with his intelligence and abilities, he

12   should be able to secure much education that will serve him

13   well in the marketplace after he comes out of this prison

14   sentence.  There is an old saying, You can lead the horse to

15   the water, but you can't make the horse drink.  So we can

16   provide drug services, I can require the provision of

17   educational and vocational services, but unless Mr. Carpenter

18   wants to avail himself of those, he will not be benefited.

19         Thereafter, five years of supervised release in the

20   community with the standard conditions of reporting and

21   remaining law-abiding.  No drugs, no guns, and no alcohol.

22   Any drugs, guns or alcohol, back to prison we go.  No

23   association with drug users or drug possessors.  No

24   association with ex-felons without the permission of the

25   probation officer, to live only in a location and with persons

1    approved by the probation officer, to make complete financial

2    disclosure of his workplace income and his expenditures and

3    the extensions for credit which he has acquired, and to be

4    gainfully employed.

5           There will be, of course, child support for these

6    children taken out of any monies he may earn while in the

7    Bureau of Prisons.  Therefore, this Court believes that these

8    children should get some money that he makes while within the

9    industries of the Bureau of Prisons and believes the state can

10   take care of itself or the nation can take care of itself in

11   that regard.  The mandatory special assessment of $100 will be

12   required to be repaid.

13          Do you have a motion as it pertains to Count 2 of

14   the indictment, Mr. Courtade?

15          MR. COURTADE:  Yes, Your Honor, both as to Count 2

16   and the supplemental information previously filed.  We'd ask

17   that they be dismissed pursuant to the plea agreement.

18          THE COURT:  Dismissed.  Any legal objection to the

19   sentence imposed not previously raised, Mr. Courtade?

20          MR. COURTADE:  None, Your Honor.

21          THE COURT:  Mr. Robinson?

22          MR. ROBINSON:  None, Your Honor.

23          THE COURT:  You have a right of appeal of this

24   sentence and this conviction.  You have 14 days within which

25   to file that appeal.  Those forms are being given to you.  You

1    will be remanded to the custody of the marshal for the

2    execution of sentence in this matter.

3            The Court specifically wants to thank you, Mr.

4    Robinson and Ms. Young, for your able representation on behalf

5    of Mr. Carpenter in this matter.  That's all for the record.

6            MR. ROBINSON:  Thank you, Your Honor.

7            (Proceedings concluded at 2:58 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER


I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript was prepared by me.




/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503