SOLOMON CARPENTER
REG.NO. 15483-040
P.O. BOX 6001
F.C.I. ASHLAND
ASHLAND, KY
41105

FILED - GR
September 18, 2014 9:38 AM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_ns_/_____    SCANNED BY:_____ 9/19/14

IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

SOLOMON CARPENTER,
    Movant,

v.

UNITED STATES OF AMERICA,
    Respondent.

Case No. 1:10-CR-236

Carpenter Seeks Sentence
Reduction Under 3582(c)(2)

    Mindful of the Court's busy schedule and not to draw the Court's ire, Solomon Carpenter ("Carpenter") seeks a sentence reduction under 18 U.S.C. § 3582(c)(2). Carpenter humbly request this Court to reduce his sentence pursuant to §3582(c)(2) based on Amendment 782 to the United States Sentencing Guidlines

(U.S.S.G.) that lowered the base offense level for indiviuals convicted of drug offenses under 21 U.S.C. §841(b)(1)(B)(iii). Section 3582(c)(2) provides:

> (c) Modification of an imposed term of imprisonment- the court may not modify a term of imprisonment once it has been imposed except that -
>
> (2) In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the director of the bureau of prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Through Amendment 782 to the Sentencing Guidelines, which becomes effective November 1, 2014, the Sentencing Commission lowered the base offense level for all durgs set forth in the sentencing guideline section 2D1.1 and through Amendment 782 to the sentencing guidelines section 1B1.10(c), that change was made retroactive. Subsection (a) of sentencing guideline section 1B1.10 addresses applications of retroactive amendments:

> (1) <u>In General</u> - In a case in which a defendant is serving a term of imprisonment, and the guidelines range applicable to that defendant has subsequently been lowered as a result of an amendment to the guideline manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 3582(c)(2).

Section 3582(c)(2) established a two-step inquiry: First, the court must determine whether the defendant is eligible for a sentence reduction. If he is, the court must consider whether, in its descretion, the authorized reduction is warranted in whole or in part under the circumstances. <u>Dillion v. United States</u>, 560 U.S. 817 (2010). The latter inquiry "shall" include consideration of the 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may" include consideration of the "post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment." U.S.S.G. 1B1.10, note 1; <u>United States v. Nesbit</u>, 420 F.Appx. 541, 545 (6th Cir. 2011).

## ELIGIBILITY

It is clear that Amendment 782 has the effect of lowering Carpenter's applicable base offense guideline range. Prior to Amendment 782, Carpenter was designated in criminal history category III at offense level 26 which produced a guideline range of 79-97 months. Application of this amendment leaves Carpenter in category III but lowers his base offense level from 26 down to level 24 which yields a guideline range of 63-78 months of imprisonment. Carpenter is eligible for a sentence reduction under Amendment 782.

## CARPENTER'S REQUESTED REDUCTION

Having determined that Amendment 782 applies, this Court should now turn to the sentence it intends to impose. After determining the applicable guideline range, district courts are obligated to consider the sentencing factors set forth in 18 U.S.C. § 3553(a)(1) in light of the defendant's indiviual facts and circumstances.

The basic mandate of section 3553(a) requires district courts to impose a sentence that is "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in section 3553(a): retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence ("to afford adequate deterrence to criminal conduct"), incapacitation ("to protect the public from future crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). 18 U.S.C. 3553(a)(2). These four principles can be traced back to historical theories of punishment, and serve as the guiding values and goals in sentencing. Thus, this "parsimony provision" functions as a theoretical limit on what sentence to impose. The Supreme Court has consistently instructed that the punishment should fit the offender and not merely the crime, and thus judges should consider the fullest information possible concerning

the defendant's life and characteristics to determine the appropriate sentence.

In determining whether a sentence is sufficient, but not greater than necessary, the court must consider the five factors set forth in §3553(a):

   (1)   Nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   The need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and deter criminal conduct;

   (3)   Kinds of sentence available;

   (4)   The need to avoid unwarranted sentence disparities;

   (5)   The need to provide restitution to victims.

Taking the nature and circumstances of the offense and the history and characteristics of the defendant first, Carpenter was the resident of a home in which 38 grams of crack cocaine was discovered. No firearms were present, and no violence occurred in connection with the drug offense. Carpenter is 33 years old and presently serving his first -- and only -- term of incarceration. Carpenter was raised in a single parent household and notes that his mother was the perfect example of what hardwork and determination can bring you. Like most drug offenders, Carpenter has a history of substance abuse. Carpenter is the father of five children (all by the same woman) and currently engaged to be married upon his release from prison.

Second, the need for the sentence to reflect the seriousness of the offense, provide just punishment, and deter criminal conduct. As to the seriousness of the offense, crack cocaine is a very serious drug, but there is nothing about the conduct here that renders this story unique. Carpenter's case is that of another drug user who stopped seeking education and employment and got involved in the world of drugs. In August 2010, Congress determined that a mandatory minimum of five years is the appropriate punishment for this type of low-level dealer.

Third factor not applicable here.

Fourth, the need to avoid unwarranted sentence disparities. Carpenter humbly request this Court to fashion his sentence in line with United States v. Shull, 2011 U.S. Dist. 69306. In Shull, the defendant was resentenced on remand after having a conviction vacated. Shull was resentenced under a jury trial conviction for possession with intent to distribute 52.9 grams of crack cocaine. With a criminal history III and offense level 26, Shull's guideline range was 79-97 months. After full consideration of section 3553(a) and Shull's post-conviction rehabilitation, District Court Judge Algenon L. Marbley imposed a below guideline sentence of 60 months in accordance with the Fair Sentencing Act. Carpenter also urges this Court to consider the need to avoid unwarranted sentence disparities pursuant to §3553(a)(6).

The final factor, the need to provide restitution to victims, is one that Carpenter will initiate on his own by

allocating a portion of his freetime to volunteer in his community.

## CARPENTER'S RECOMMENDED SENTENCE

Naturally, Carpenter seeks a sentence of 63 months which is consistent with Shull. This Court is also to consider the sentence that it would have imposed at the date of the original sentence had the amendment been in effect at the time. U.S.S.G. §1B1.10(b). The new guideline range of 63-78 months triggers a couple of different algorithms for the Court to consider. Carpenter received a sentence one month below the original high-end.

Carpenter humbly request a sentence at the bottom of the new guideline range.In support of this request, Carpenter asks the Court to consider his outstanding post-conviction rehabilitation. This Court has routinely considered post-conviction conduct in its discretion to grant reductions under 3582(c)(2). "The Supreme Court supports the inclusion of this post-conviction evidence based on the 'uniform and constant' notion that the sentencing judge should 'consider every convicted person as an individual and every case as a unique story in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" Koon v. United States, 518 U.S. 81 (1996). It also notes that "[u]nderlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" Peppers v. United States, 131 S.Ct. at 1240 (quoting Williams v. New York, 337 U.S. 241, 247 (1949)).

With conviction Carpenter proudly asserts that he is not the same defendant that stood before this Court on April 4, 2011. During that sentencing hearing this Court highlighted Carpenter's drug history. Not to minimize the past but Carpenter has attached copies of the lab results from those convictions to inform the court of the small, usage amounts of drug involved. See Attachment-A.

More than a century ago, late Justice Oliver Wendall Holmes Jr. said "[i]t is the province of knowledge to speak; and it is the privilege of wisdom to listen." This Court spoke and gave Carpenter two recommendations in that first, "Carpenter be evaluated and treated for substance abuse," and second, finding Carpenter to be an "intelligent young man, albeit unmarried,... he should be given vocational and educational training." See Sentencing Tr. at Pg. 50. In dealing with the first, Carpenter has successfully completed both the 40-hour Drug Abuse Class and the 6-month Non-Residential Drug Abuse Program. He has also passed all random drug and alcohol test at both FCI Gilmer and FCI Ashland, which he might add are both environments that has its share of drug and alcohol.

The recommendation to seek educational and vocational training has been the water to Carpenter's horse. From the outset of Carpenter's incarceration, he has availed himself of every educational and vocational class offered at his institutions. This Court is aware of Carpenter's national

certification in HVAC, his West Virginia electrical apprenticeship license, and his other certificates of participation earned at FCI Gilmer. Since arriving at FCI Ashland, Carpenter has successfully completed over a dozen programs (See Attachment-B). Courtade questioned whether or not Carpenter was going to be amenable to rehabilitation. The post-conviction record shows a young man rehabilitated, reformed and ready for reentry. This Court should also note that Carpenter has received not one single incident report since being incarcerated. This Court believed "that with the right attitude and with his intelligence and abilities, [Carpenter] should be able to secure much education that will serve him well in the marketplace after he comes out of this prison sentence." id. at 50. Carpenter has done just that. In addition to these accomplishments, it should be noted that Carpenter has maintained employment and has paid both $100.00 assessment fees. See Attachment-C, D and E.

Carpenter's sentence request of 63 months is also in concert with the Court's educational/vocational recommendation. A reduced sentence of 63 months would shorten Carpenter's incarceration by about one month when compared to a high-end sentence of 77-months (one month below guideline max). A low-end sentence would allow Carpenter to participate in the welding certification program that is offered here at FCI Ashland. See Attachment-F. A high-end sentence would allow Carpenter

to immediately enter into the RDAP which is not offered here at FCI Ashland, thus requiring Carpenter to transfer to another institution. Carpenter is of the logical belief that a nationally recognized welding certification would serve him better in the marketplace upon release compared to the completion of the RDAP which is a required class of supervised release. Below are the sentencing calculation for both a low-end and high-end sentence reduction:

Applicable Guideline Range
(Category III, Offense Level 24)
63-78 months

| Sentence A | | Sentence B |
|---|---|---|
| 63 | sentence reduction | 78 |
| + 13 | consecutive sentence | + 13 |
| 76 | total sentence | 91 |
| − 6 | halfway house | − 6 |
| 70 | | 85 |
| − 9 | goodtime | − 11 |
| 61 | | 74 |
| − 45 | Time served on Nov. 11, 2014 | − 45 |
| 16 | | 29 |
| | | − 12 (RDAP) |
| | | 17 |

NOTE:  Sentence A's reduction would reduce Carpenter's sentence 33 months saving the BOP almost $90,000. Sentence B's reduction would reduce by 18 months saving the BOP just $45,000.

## CARPENTER'S RELEASE PLAN

### RESIDENCE

Initially, I will reside in the city my family relocates to which is most likely Atlanta, Ga. It is anticipated that my unit team will recommend me to a community correctional center (halfway house) placement to assist me with my transition back into society. Once I have completed the requirements there and become eligible for home confinement, I will live at home again with my family. They are in full agreement with this as evidenced by their letters that I have attched to this motion. I am also engaged to be married upon my release from the BOP as stated in my fiancée's letter. See Attachment-G.

### EMPLOYMENT

Option #1 -   I intend to look for a job in the HVAC field utilizing my national certifications from the ESCO Institute as a universal technician in addition to the other several certifications.

Option #2 -   I plan to schedule, take and pass the electrical apprenticeship exam for the State of Georgia to obtain a license similar to the one I received from West Virginia State Fire Marshal's Office.

Option #3 -   I plan to look for a job in the welding field if my sentence is reduced to the low-end. Atlanta is a growing city and welding is probably in high demand.

Option #4 -   I am President and contributing editor at Football Stars of Tomarrow (.com) which is a company created by my brother and I. While we have yet to generate a significant profit, we have had over 1-million visits. With a little more time, hardwork and direction, financial success is just a day away. See Attachment-H.

Option #5 -   I also took a CDL class while here at Ashland. It has opened the door to commercial driving as a career. I will look into this as I obtain my driver's license upon release.

Option #6 -   With more than 300 hours logged in FCI Ashland's auto body repair course, I will also seek employment in the auto body repair field upon my release from prison.

## COMMUNITY SERVICE

Even though I was not court ordered to complete a term of community service, I wholeheartedly believe that I owe an unpaid debt to my neighborhood. I can immediately give back by utilizing the skill I learned and developed in the public speaking class I completed. I would like to speak to at-risk youth and educate them about the importance and impact of their decision-making. Prior to this incarceration I helped sponsor and worked with a street-team that cleaned up trash around our neighborhood. After 50 hours each kid received a new bike. With the support of sponsors and donations I would like to restart that program and possibly link with other youth volunteer groups.

## REHABILITATION

Under the term of my supervised release, I am required to stay drug and alcohol free. Already living and maintaining this lifestyle, I still plan to attend monthy meetings at a local alcohol/narcotics anonymous groups.

## EDUCATION & REHABILITATION

As stated above, I earned a national certification through ESCO Institute in HVAC as a universal technician; a electrical apprenticeship license from West Virginia State Fire Marshal's Office. In addition to those vocational certifications (and license), I also completed the following courses while in prison*:

- <u>FCI Gilmer</u>:

    - VT HVAC
    - VT Electrical program
    - Parenting I
    - Awareness Before Change (ABC) I & II
    - Mock Job Fairs
    - Green Facilities Maintenance

-12-

- Basic Spinning
- Jump Rope
- Cardio Conditioning

- FCI Ashland:
    - Work Readiness
    - Business Workshop I & II
    - ACE Technology For Exoffenders
    - ACE Real Estate Essentials
    - Keyboarding
    - ACE The PLAN-Re-Entry
    - Prison To Paycheck
    - ACE Public Speaking
    - Commercial Drivers License (CDL)
    - Basic Consumer Investing
    - Sales Skills
    - Auto Body Repair
    - Consumer Finance
    - ACE Agricultural opportunities
    - Mock Job Fair
    - Internet Personal Info Security
    - Internet Firefox
    - Internet Basics
    - Windows 7
    - Microsoft Power Point I
    - Microsoft Excel I & II
    - Microsoft Word I & II
    - Recreation Aide
    - Woodart (made picture frame)
    - Knitting (scarf was too tedious)

* I have attached copies of my certificates of completion for the Court to review.

When I am release, I fully intend to re-enroll at a community college where I will pursue a degree in business science and community counseling. I'm confident that I will be eligible for financial aid since I paid out-of-pocket for all my classes when this drug conviction came about.

## CONCLUSION

In conclusion, this Court, my family and more importantly myself have all witnessed the transformation I have made in my life. My past is one with a wealth of bad decisions in the lots of boyhood, adulthood, fatherhood and being a productive member of a trying community. I look at where I was prior to my incarceration and realize that being institutionalized was -- at the time -- the best thing for me and my family. Sometimes it is the wrong decisions that lead us to the right places. I have made every effort to use my time constructively while in prison. I have acquired so much education and vocational training that now, with some pride and justification, I can identify myself as a Man, a Father, an Honorable Son, a worthy Husband, and now I am ready to rejoin and become a productive member of society.

Every day I awake knowing that I am positively progressing towards a better individual with a strong, opportunistic future. The man I have become is humble, discipline, respectful, obedient, drug-free, responsible, deserving, anxiously-patient, yet regretful. Francis Bacon said, "[a] wise man will make more opportunities than he finds." Today I find that to be totally accurate. My self-worth is over and above what I envisioned or aspired

it to be. Yet I still realize that my potential is all that I desire. I am qualified to seek employment in fields that were forever foreign to me before incarceration. And not to open old scars, but I have discovered better uses for the computer than researching constitutional offensive arguments dealing with capital letters. I am proficient in Microsoft Excel and Power Point. Moreover is the fact that I understand and appreciate the responsibility and honor that stems from a hard day's work. The aftermath of this incarceration will have produced the perfect role model for my son to emulate; a prime example of the ideal-man (absent prison reform) my daughters should seek; a son my mother can boast about and; a man my fiancée's parents will approve of.

Outfitted with the surreal experience of prison and the relinquishing of many of my fatherly/manly responsibilities and privileges, vowing to never return to prison is not a strech. And believe it or not, missing birthdays and holidays is somewhat easier to cope with than the dateless events like first days of a new school and checking homework, weekend trips, or sneaking a dollar under the pillow for the Tooth Fairy. I miss something special every single day that I am behind bars. To be vocally involved but physically detached is my plain definition of hell on earth. Which is why I will never understand how men return to prison for any reason; and while I am not qualified to grade them, I easily distinguish myself. I know with absolute certainty that once I have earned another chance at freedom and privilege --

no thought, no temptation, no hardship, no person, no crime, nothing will ever entice me to strip and deprive my family of my much needed and required presence in the home. Creating and partaking in memorable experiences is real wealth in its most expansive meaning.

The day after tomarrow is mine for the making. It is said that "there is never a better measure of what a person is than what he becomes when he's absolutely free to choose." In short, Judge Bell, I just want to be free, at home with my family, working toward retirement, in good health and spirits, and law-abiding for the remainder of my days and nights on this sphere we know as earth. A low-end sentence of 63 months (plus 13 consecutive) which would result in a total sentence of 76 months would allow me to be home in early 2016. I will be 35 years young with a beautifully brighter future ahead of me. My son (Treveon) will be 18 and hopefully on his way into college or a branch of the armed forces; my oldest daughter (Adajah) will be in her last year of high school which means I will be able to see her walk in cap-and-gown as well as clock her in before midnight on her prom night; Alaiyah (second oldest daughter) will be a junior in high school allowing me to attend her senior season basketball games; Navia will be 13 and preparing for her first year of high school after we enjoy summer vacation together; and Samara (the baby girl) will be 8 and ready to start the thrid grade in the upcoming school year. I miss my family so much

Judge Bell, it is an emotion that words give no justice. Home is where I belong. I pray that this Court will reduce my sentence to 63 months.

"I will prepare and someday my chance will come."
- Abraham Lincoln

Respectfully submitted,

_____
SOLOMON CARPENTER

-17-